**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **MICHAEL P. ENMON,** | § | **CASE NO. 18-30112** |
| | § | |
| **Debtor.** | § | |
| | § | **CHAPTER 11** |

**PROSPECT CAPITAL CORPORATION'S MOTION TO DISMISS**
**CASE PURSUANT TO 11 U.S.C. § 1112(b)**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**A HEARING TO CONSIDER THIS MOTION HAS BEEN SET FOR MARCH 8, 2018 AT 2:00 P.M. BEFORE THE HONORABLE DAVID. R. JONES, COURTROOM 400, 515 RUSK AVE., HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**To the Honorable David R. Jones,**
**Chief United States Bankruptcy Judge:**

Prospect Capital Corporation ("Prospect") respectfully submits this Motion to Dismiss ("Motion") the chapter 11 case of Michael P. Enmon ("Enmon" or "the Debtor") pursuant to 11 U.S.C. § 1112(b).

**SUMMARY OF MOTION**

1.       This case is the latest in a series of bad faith bankruptcy filings orchestrated by the Debtor to thwart Prospect's legitimate collection efforts.  This time, the Debtor proposes a

1

"plan" that is premised entirely on an unsupported interpretation of Judge Hoyt's 2012 fraudulent transfer judgment against the Debtor, his wife and certain affiliates. At its core, this case is nothing more than a litigation tactic in a decade-long two-party dispute. The Debtor's prior bankruptcy attempts have been dismissed as bad faith filings. Nothing about the Debtor's newly conceived strategy should change this conclusion. For the reasons set forth below, Prospect requests that the Court dismiss this case to allow Prospect to enforce its rights as a judgment creditor in federal district court.

## JURISDICTION

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1334, 157(a), and the standing order of reference. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The predicate for the relief requested herein is Bankruptcy Code §1112(b).

## FACTUAL BACKGROUND

3.      In April 2006, the Debtor — by that time, a graduate of the University of Chicago School of Business and an experienced New York investment banker — contacted Prospect to request a $10 million loan for his Arizona-based company, Caprock Pipe & Supply LP. On April 11, 2006, Prospect and the Debtor entered into a letter agreement (the "Letter Agreement") providing *inter alia* that Prospect could, in its "sole discretion," "decline to participate in the proposed financing without incurring any liability." A true and correct copy of the Letter Agreement is attached at **Exhibit 1**. Prospect ultimately declined to provide financing to the Debtor's company, which it was entitled to do under the Letter Agreement.

4.      On December 4, 2006, notwithstanding the clear terms of the Letter Agreement, the Debtor filed a patently frivolous lawsuit against Prospect in Texas state court claiming that Prospect was liable for $50 million because it declined to provide financing to the Debtor's

company.  In response, Prospect successfully moved to compel arbitration and initiated an arbitration against the  Debtor in New York, seeking a declaration that it was not liable to the Debtor and that the Debtor must pay all of Prospect's attorneys' fees. The ten-day arbitration hearing began in New York on July 23, 2007, continued on July 24-27 and September 27-29, 2007, and concluded on November 14- 15, 2007.

5.      On April 14, 2008, the arbitrator dismissed the Debtors' claims in their entirety, finding there was "no credible evidence" supporting them, awarded the Debtor nothing and found that Prospect should be awarded its attorneys' fees in defending against the Debtor's baseless claims (the "Arbitration Ruling").  A true and correct copy of the Arbitration Ruling is attached as **Exhibit 2.**

6.      As part of the Arbitration Ruling, the arbitrator directed Prospect to submit supporting papers to calculate the final award against the Debtor.  *Id.*  Thereafter, on August 23, 2008, the arbitrator awarded Prospect $2,287,687.32 against the Debtor (the "Attorneys' Fee Award").  A true and correct copy of the Attorneys' Fee Award is attached as **Exhibit 3.**

7.      One month after the Attorneys' Fee Award, on September 24, 2008, the Debtor directed his lawyer to form the Enmon Irrevocable Family Trust (the "Enmon Trust").  The Enmon Trust was characterized as an irrevocable gift from the Debtor's impoverished mother, Grace Enmon, to the Debtor and his wife Kari Enmon, as the sole beneficiaries.  The Debtor then transferred his most valuable asset at the time—mineral rights worth between $440,000 and $840,000—to his mother, who then sold part of those rights and transferred the proceeds to the Enmon Trust.

8.      On October 15, 2008, the United States District Court for the Southern District of New York confirmed the Attorneys' Fee Award and issued a final judgment in favor of

Prospect against the Debtor for the full amount of Prospect's attorneys' fees, $2,287,687.32, plus 9% interest (the "Arbitration Judgment").  A true and correct copy of the Arbitration Judgment is attached as **Exhibit 4**.  The District Court later granted Prospect's post-judgment motion for sanctions against the Debtor's law firm, Arnold & Itkin, LLP, based on the "persistent, frivolous litigation" it pursued on the Debtor's behalf.  On April 6, 2012, the Court of Appeals for the Second Circuit affirmed this monetary sanctions award.  A true and correct copy of the Second Circuit's ruling is attached as **Exhibit 5**.

9.      To date, the Debtor has not voluntarily paid any portion of the Arbitration Judgment, which now exceeds $4 million after accounting for accrued interest.

10.      Following the Arbitration Judgment, the Debtor immediately created Kickapoo Kennels, LLC ("Kickapoo"), owned 10% by the Debtor and his wife and 90% by the Enmon Trust, and began funneling assets into the company to avoid paying the Arbitration Judgment. The Enmon Trust used the cash it had from the sale of the fraudulently transferred mineral rights to purchase the real property on which Kickapoo operates.  A true and correct copy of Kickapoo's Amended and Restated Company Agreement is attached as **Exhibit 6**.

11.      On February 18, 2011, after learning of the Debtor's fraudulent conduct, Prospect filed an action before Judge Hoyt in the United States District Court for the Southern District of Texas (the "Fraudulent Conveyance Action") asserting that the Debtor, the Debtor's wife Kari Enmon, the Debtor's mother Grace Enmon, Kickapoo, and the Enmon Trust all participated in a fraudulent scheme to hide the Debtor's assets from Prospect.  A true and correct copy of Prospect's complaint initiating the Fraudulent Conveyance Action is attached as **Exhibit 7**.

12.      Prospect also immediately moved for a Temporary Restraining Order, which Judge Hoyt entered on March 1, 2011, restraining, *inter alia*, Kickapoo from "[m]aking any

transfer, sale, or distribution of any assets of The Enmon Irrevocable Family Trust or Kickapoo Kennels, LLC, save utilities, taxes and product suppliers to any person or entity for any purpose." A true and correct copy of the Temporary Restraining Order is attached as **Exhibit 8**.

13. In discovery, Prospect learned that Kickapoo, the Debtor, and his wife Kari Enmon violated the Temporary Restraining Order issued by Judge Hoyt when Kickapoo funneled funds to the Debtor and Kari Enmon to pay for their personal expenses, allowing the Debtor to avoid depositing funds into his own personal bank account—which would have been subject to Prospect's attachment. On March 23, 2012, Prospect filed an emergency motion requesting that the Court issue an order holding the Debtor, Kari Enmon and Kickapoo in contempt of court for violating the Temporary Restraining Order. A true and correct copy of Prospect's Motion for Contempt is attached as **Exhibit 9**.

14. On April 11, 2012, Judge Hoyt found the Debtor, Kari Enmon and Kickapoo in contempt of court, and directed them to deposit $79,645.89 into the registry of the court. A true and correct copy of the Order granting Prospect's Motion for Contempt is attached as **Exhibit 10**. This money was later distributed by the court to Prospect to pay down its Arbitration Judgment against the Debtor.

15. On April 25, 2012 — just two weeks before trial in the Fraudulent Conveyance Action was scheduled to begin — the Debtor's mother Grace Enmon filed for bankruptcy in the Eastern District of Texas (the "Grace Enmon Bankruptcy"). A true and correct copy of Grace Enmon's chapter 11 bankruptcy petition is attached as **Exhibit 11**. Bankruptcy court records confirm that the Debtor himself paid for Grace Enmon's bankruptcy attorney. A true and correct copy of the Disclosure of Compensation of Attorney for Debtor filed by Grace Enmon on April 25, 2012 is attached as **Exhibit 12**.

16.     On May 3, 2012, Judge Hoyt stayed the Fraudulent Conveyance Action pending resolution of the Grace Enmon Bankruptcy.

17.     On May 21, 2012, Prospect filed a Motion for Relief from the Automatic Stay in the Bankruptcy Court for the Eastern District of Texas, noting that the filing was plainly a tactic to delay the trial before Judge Hoyt.  A true and correct copy of Prospect's Motion for Relief from the Automatic Stay is attached as **Exhibit 13**.  On June 26, 2012, Judge Parker conducted a hearing and granted Prospect's motion.  A true and correct copy of the Order granting Prospect's Motion for Relief from the Automatic Stay is attached as **Exhibit 14**.

18.     On June 27, 2012, the United States Trustee for the Grace Enmon bankruptcy filed a Motion to Dismiss the bankruptcy case, stating: "The present case was filed as a litigation tactic to forestall the Prospect lawsuit. This is not a good faith use of the bankruptcy process."  A true and correct copy of the Motion to Dismiss is attached as **Exhibit 15**.  Grace Enmon did not contest the United States Trustee's motion and, on July 16, 2012, Judge Parker granted the motion and dismissed the Grace Enmon Bankruptcy.  A true and correct copy of the order granting the motion to dismiss is attached as **Exhibit 16**.

19.     On February 7, 2013, Judge Parker sanctioned Grace Enmon's attorney in the amount of $17,615.66 for participating in a "scheme" with the Debtor to use the bankruptcy petition in an attempt to delay the Fraudulent Conveyance Action pending before Judge Hoyt.  A true and correct copy of the order granting sanctions is attached as **Exhibit 17**.

20.     On November 27, 2012, after trial in the Fraudulent Conveyance Action, Judge Hoyt entered a Memorandum Opinion and Order (amended to correct a technical error on February 5, 2013), finding that the Debtor, with the assistance of Kickapoo and the other defendants, participated in a fraudulent scheme to hide the Debtor's assets from Prospect.  A true

and correct copy of the Memorandum and Order is attached as **Exhibit 18**.  Pursuant to that Memorandum and Order, on December 17, 2012, Judge Hoyt entered a Final Judgment against the Debtor, Kari Enmon, Kickapoo, the Enmon Trust and Grace Enmon (the "Fraudulent Conveyance Judgment").  A true and correct copy of the Fraudulent Conveyance Judgment is attached as **Exhibit 19**.

21.    In the Fraudulent Conveyance Judgment, among other things, Judge Hoyt sanctioned the Debtor and his wife Kari Enmon, holding them jointly and severally liable in the amount of $200,000.  *See* **Exhibit 19**.  The Fraudulent Conveyance Judgment also provided, *inter alia*, the following:

- "that all transfers of personal property, including cash, of Michael Enmon into Kickapoo, are void;"

- "that all transfers of money and/or property of any kind, real or otherwise, into the [Enmon] Trust, by any Defendant, are void;"

- "that all transfers of money and/or property of any kind, real or otherwise, into Kickapoo, by any Defendant, are void;"

- "that, upon request by Prospect, a writ of attachment and/or turnover order shall issue requiring each Defendant to turn over to Prospect all right, title and interest to each of the following, in an amount not to exceed the Judgment plus accrued interest:

     1) the remaining Mineral Rights;
     2) all real property owned by Kickapoo;
     3) all personal property owned of Kickapoo;
     4) all real property owned by the [Enmon] Trust; and
     5) all assets of the [Enmon] Trust;" and

- "that upon request by Prospect a writ of attachment and/or turnover order shall issue requiring all receivables of Kickapoo to be turned over to Prospect and requiring Kickapoo to direct all receivables payments otherwise due to Kickapoo directly to Prospect, in an amount not to exceed the Judgment plus accrued interest".

*See* **Exhibit 19**.

22.    On December 20, 2012, three days after entry of the Fraudulent Conveyance Judgment, Kickapoo filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas (the "Kickapoo Bankruptcy").  A true and correct copy of Kickapoo's chapter 11 bankruptcy petition is attached as **Exhibit 20**.

23.    On January 24, 2013, Prospect filed an Abstract of Judgment in the United States District Court for the Southern District of Texas and on February 4, 2013 recorded its Abstract of Judgment in three Texas counties: Harris County, Jefferson County and Shelby County. True and correct copies of the Abstracts of Judgment are attached as **Exhibits 21, 22, and 23**.  Based on the Abstracts of Judgment, Prospect holds a valid and perfected lien against any real property owned by the Debtor.

24.    On June 19, 2013, the Bankruptcy Court dismissed the Kickapoo Bankruptcy, concluding that Kickapoo had "no financial need" to file for bankruptcy, and instead "appear[ed]" to have filed the bankruptcy petition "to gain an unfair advantage in a two-party dispute, by delaying implementation of the Judgment of the United States District Court for the Southern District of Texas, while an appeal is pending."   A true and correct copy of the Bankruptcy Court's Memorandum Opinion granting Prospect's Motion to Dismiss the Kickapoo Bankruptcy is attached as **Exhibit 24**.

25.    On March 14, 2014, Court of Appeals for the Fifth Circuit affirmed the Fraudulent Conveyance Judgment.  A true and correct copy of the Fifth Circuit's order affirming the Fraudulent Conveyance Judgment is attached as **Exhibit 25**.

26.    To date, except for the $79,645.89 paid by the Debtor to the court as a sanction for his contempt, and which the court later ordered to be paid to Prospect, no amounts have been voluntarily paid towards the Prospect judgments.

27.     In the years since Judge Hoyt issued the Fraudulent Conveyance Judgment, the Debtor and his wife have continued to operate a dog kennel business through Kickapoo, including filing a federal Form 1065 (U.S. Return of Partnership Income) with the IRS on behalf of Kickapoo each year from 2013 to 2016.  True and correct copies of Kickapoo's tax returns for 2013, 2014, 2015 and 2016 are attached, respectively, as **Exhibits 26, 27, 28 and 29**.  Similarly, during these years, the Enmon Trust filed tax returns on its own behalf and the Debtor and his wife filed their own personal joint tax returns.  True and correct copies of the Enmon Trust's tax returns for 2014, 2015 and 2016 are attached, respectively, as **Exhibits 30, 31 and 32**.

28.     Since the Fraudulent Conveyance Judgment, Prospect periodically served post-judgment discovery on Kickapoo, the Debtor and Kari Enmon, to assess why those parties have refused to pay Prospect any portion of the outstanding judgments against them.  That discovery has shown:  (i) the Debtor and his wife have identified no material personal assets or bank accounts that Prospect can attach to satisfy its judgments, (ii) Kickapoo is a profitable enterprise, (iii) the Debtor and his wife are using significant amounts of Kickapoo funds to support an extravagant personal lifestyle, and (iv) the Debtor and his wife continue to fraudulently transfer assets from their entities to themselves.  *See* Prospect's Receiver Motion, defined below and attached as **Exhibit 33**.  Additionally, discovery reveals that the Debtor and Kickapoo continue to service their debt obligations to other creditors, including Mutual of Omaha Bank.  *Id*.

29.     Based on the documents produced by the Debtor in the Fraudulent Conveyance Action, between 2014 and 2016, the Debtor has withdrawn over $300,000 in cash from Kickapoo's bank account, much of which is unaccounted for, and has paid himself and his wife over $470,000 "on the books" and likely much more "off the books".  *See* **Exhibit 33**. Additionally, the Debtor has used Kickapoo to pay hundreds of thousands of dollars for his

personal entertainment, Caribbean vacations, Tiffany's jewelry, plastic surgery and tanning for his wife, hunting club dues, clothing, etc. – all in order to evade Prospect's collection attempts. *See* **Exhibit 33** at ¶¶ 32-34.

30.     Accordingly, on May 19, 2017, in the Fraudulent Conveyance Action before Judge Hoyt, Prospect filed its "Motion to Appoint a Receiver over Kickapoo Kennels, LLC and Related Relief" (the "Receiver Motion").   A true and correct copy of the Receiver Motion is attached as **Exhibit 33**.  As detailed in the Receiver Motion, and in Kickapoo's tax returns, the Debtor and his wife have repeatedly used Kickapoo's assets to pay their own personal expenses, including causing Kickapoo to purchase a "Porsche Cayenne" in Kickapoo's name in November 2016 for the Debtor's personal use.  *See* **Exhibit 33** at ¶¶ 32-34; **Exhibit 29** at p. 14 (Form 4562 p.2) (listing the Porsche Cayenne as an asset of Kickapoo).

31.     On June 1, 2017, the Debtor, Kari Enmon, the Enmon Trust and Kickapoo responded to the Receiver Motion by filing a "Motion to Dismiss, Response, Objections, and Alternative Relief Request" (the "Response to Receiver Motion").  A true and correct copy of Debtor's Response to Receiver Motion, together with a copy of "Exhibit 2" to the Response to Receiver Motion, is attached as **Exhibit 34**.

32.     In the Response to Receiver Motion, the Debtor admitted to and even listed out certain "expenditures by Kickapoo on [the Debtor's] personal items" and admitted to taking over $273,000 of cash from Kickapoo's bank accounts (which according to the bank records was actually well over $300,000).  *See* **Exhibit 34** at ¶¶ 8-9 and Exhibit 2 thereto.

33.     On August 2, 2017, in a teleconference with Judge Hoyt, the parties agreed to the appointment of a specific individual as the receiver over Kickapoo and represented to the court that the parties would endeavor to come to an agreement on the terms of an order appointing the

10

agreed-upon receiver. This agreement was subsequently memorialized in a joint submission to Judge Hoyt concerning the status of the proposed order. *See* **Exhibit 35** ("As the Court may recall from the August 2, 2017 teleconference, the Parties agreed to the appointment of Mr. David A. Fettner as a receiver in this matter and agreed to try to come to an agreement on the terms of an Order appointing Mr. Fettner. The parties are working toward this goal but still have not agreed upon the form of the proposed order. This is the joint report the Court ordered counsel to make today concerning progress toward an agreed form of Receivership Order in this case. Counsel for Prospect, Mr. Gage, and for Respondents, Mr. Wauson, have cooperated in preparing this report and request; it is submitted jointly. . . .").)

34.     The parties were unable to agree on the terms of an order appointing the agreed-upon receiver, but their agreement to appoint Mr. Fettner as the receiver over Kickapoo is undisputed.

35.     The hearing on the Receiver Motion was initially set for August 2017, but was adjourned due to Hurricane Harvey and later rescheduled for January 11, 2018. However, on January 10, 2018, at 9:00 p.m., the night before the Receiver Motion was set to be heard before Judge Hoyt, the Debtor filed this chapter 11 case. Contrary to the Debtor's past business practices, prior representations to the courts in the Fraudulent Conveyance Action and Kickapoo Bankruptcy, and the tax returns filed by the Debtor, Kickapoo, and the Enmon Trust with the IRS, the Debtor's chapter 11 petition (the "Petition") claims that Kickapoo is a "sole proprietorship" and lists all of the assets of both Kickapoo and the Enmon Trust as property of the Debtor. *See* Docket No. 1.

36.     On January 11, 2018, the parties appeared before Judge Hoyt who (1) cautioned the Debtor that "with the history that this has been through, that no judge is going to be

sympathetic to someone" like the Debtor; (2) expressed his desire to withdraw the reference ("I'm going to withdraw the reference on that bankruptcy, and I am going to bring it into this case, and we are going to go ahead and proceed with his bankruptcy and any other matters that might be related to it"); and (3) expressed his view that in light of the telephonic conferences and the history of the case, the Debtor's bankruptcy filing was "all delay" and "we will have a hearing as to whether or not this is another fraudulent filing by him [the Debtor]."  A true and correct copy of the transcript of the January 11, 2018 hearing before Judge Hoyt is attached as **Exhibit 36**.

37.     On January 26, 2018, the Debtor filed a chapter 11 plan of reorganization [Docket No. 36] (the "Plan").  The Plan purports to collapse all of the assets of Kickapoo and the Enmon Trust into the *Debtor's estate* and sell the assets "free and clear" pursuant to Section 363(f).  The apparent support of this legal fiction is the Fraudulent Conveyance Judgment, which provides for no such conclusion.  This, in addition to numerous fatal flaws as set forth below, render the Plan patently unconfirmable as a matter of law and only further support the need for dismissal.

## ARGUMENT

38.     Section 1112(b) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (the "Code"), entitles Prospect (as a creditor and party in interest) to seek to dismiss the Debtor's bankruptcy case.  Specifically, section 1112(b) provides:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **for cause** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate.

11 U.S.C. § 1112(b)(1) (emphasis added).

39.     The Fifth Circuit has repeatedly interpreted "cause" for purposes of § 1112 to include the bad faith filing of a chapter 11 petition. *See, e.g., In re Humble Place Joint Venture*, 936 F.2d 814, 816-17 (5th Cir. 1991) (citing *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek)*, 779 F.2d 1068 (5th Cir. 1986)). In *Little Creek,* the Fifth Circuit held:

> Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."

*Little Creek*, 779 F. 2d at 1072.

40.     Without question, "a debtor's attempt to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute strongly supports a finding of cause" under § 1112. *In re Starmark Clinics, LP*, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008).

41.     Courts in the Southern District of Texas have "generally found cause to dismiss cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute." *In re Antelope Techs., Inc.*, No. 07-31159-H3-11, 2010 WL 104556, at *3 (Bankr. S.D. Tex. Jan. 7, 2010) (dismissing bankruptcy case), *aff'd,* No. 07-31159-H3-11, 2010 WL 2901017 (S.D. Tex. July 21, 2010), *aff'd,* 431 F. App'x 272 (5th Cir. 2011).

42.     "[W]hen a bankruptcy court finds that a party has pursued bankruptcy to secure a litigation advantage in another forum, it establishes bad faith and necessitates dismissal." *Krueger v. Torres*, No. 4:14-CV-413-O, 2014 WL 12584335, at *3 (N.D. Tex. Nov. 26, 2014), *aff'd sub nom. In re Krueger*, 812 F.3d 365 (5th Cir. 2016) (internal citations omitted).

*See also In re Phicof, LLC*, No. BR 11-52527, 2011 WL 5855048, at *6 (Bankr. W.D. Tex. Nov. 22, 2011) ("The court finds that this bankruptcy case was simply a litigation tactic and of no benefit to creditors or other third parties. Therefore 'cause' exists for dismissing this case.") (dismissing bankruptcy case).

43.     Generally speaking, courts have found good faith lacking in cases exhibiting a "conglomerate" of the following non-exclusive factors:

1)   the debtor has one asset, such as a tract of undeveloped or developed real property;

2)   the secured creditors' liens encumber this tract;

3)   there are generally no employees except for the principals;

4)   there is little or no cash flow;

5)   there are no available sources of income to sustain a plan of reorganization or to make adequate protection payments;

6)   there are only a few, if any, unsecured creditors whose claims are relatively small;

7)   the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

8)   bankruptcy offers the only possibility of forestalling loss of the property;

9)   there are sometimes allegations of wrongdoing by the debtor or its principals; and

10)  the case is a "new debtor syndrome" case.

*Little Creek,* 779 F.2d at 1072-73.

44.     Applying the foregoing legal standard, "cause" clearly exists in this case based on both the debtor's bad faith and the statutory examples of cause given in the Bankruptcy Code.

1.    **Substantially all of the Valuable Assets Listed on the Debtors' Schedules Belong to Non-Debtor Affiliates.**

45.    In filing this case, the Debtor attempts to seize on a tortured interpretation of the Fraudulent Conveyance Judgment.  Specifically, the Fraudulent Conveyance Judgment by its own terms "voided" certain transfers *as to Prospect* that occurred prior to its entry in 2012. Importantly, the Fraudulent Conveyance Judgment does *not* purport to disregard the existence or separateness of Kickapoo or the Enmon Trust.  Nor does the Fraudulent Conveyance Judgment collapse the Debtor with Kickapoo and/or the Enmon Trust or treat such entities as a "single business enterprise."   In fact, the only transfers "voided" under the Fraudulent Conveyance Judgment, other than transfers of real property, primarily concern fungible assets that either no longer exist or are no longer in Kickapoo's or the Enmon Trust's possession.

46.    Contrary to the Debtor's position, the Enmon Trust remains the record owner of the real property listed on the Debtor's Petition.  Likewise, the Debtor only owns a 5% membership interest in Kickapoo—the remaining 95% of the membership interests are held by the Enmon Trust (90%) and the Debtor's wife Kari Enmon (5%), respectively.  The Debtor's own counsel admitted these facts on the record during the January 11, 2018 hearing on the Receiver Motion:

> MR. WAUSON: The trust owns the -- the – I call it the dirt, the real property and improvements.
> THE COURT: Right.
> MR. WAUSON: And it also owns 90 percent of Kickapoo Kennels. Five percent is owned by Mrs. Enmon, and five percent is owned by Mr. Enmon of the LLC entity.

*See* **Exhibit 34** at 14:17-22.

47.    The Debtor also falsely identifies Kickapoo as a "sole proprietorship" business in his schedules.  The bankruptcy petition form clearly states: "[a] sole proprietorship is a business you operate as an individual and *is not a separate legal entity such as a corporation,*

*partnership, or LLC*" (emphasis added).  Given that Kickapoo a registered "limited liability company," it cannot be legitimately disputed that it is a "separate legal entity" and *not* as sole proprietorship.

48.     Indeed, Debtor and his wife Kari have consistently admitted their awareness and understanding of Kickapoo's separate legal existence by, among other things, filing separate federal tax returns for Kickapoo each year from 2013 – 2016 (*see* **Exhibits 26 – 29**), and by filing a chapter 11 bankruptcy petition for Kickapoo in December 2012.[1]  *See* **Exhibit 20**. Notably, Kickapoo's petition does not list among its assets either the real property owned by the Enmon Trust or the Debtor's own personal assets.  *See* **Exhibit 20**, Schedules A & B.

49.     Even if the Debtor were the sole member of Kickapoo, which he is not, the assets of Kickapoo would still not be part of the Debtor's bankruptcy estate.  It is well settled that an individual LLC member does <u>not</u> have an ownership interest in the assets of the LLC.  *See* Section 101.106(b) of the Texas Limited Liability Companies Act ("A member of a limited liability company or an assignee of a membership interest in a limited liability company does not have an interest in any specific property of the company."); *In re HSM Kennewick, L.P.,* 347 B.R. 569 (Bankr. N.D. Tex. 2006) (holding that automatic stay in place in chapter 11 case filed by member of limited liability company did not prevent other member from commencing state court receivership action against company, on theory that receivership action affected value of bankrupt member's interest in company; receivership action did not threaten to dismember

---

[1] Indeed, in Debtor's Application for Authority to Employ Accountant, filed on February 7, 2018 [Docket No. 40] (the "<u>Accountant Motion</u>"), the Debtor seeks this Court's approval to pay an accounting firm to prepare three separate federal tax returns, respectively, for each of (1) the Debtor and his wife Kari Enmon, (2) the Enmon Trust, and (3) Kickapoo. (*See* Accountant Motion at ¶¶ 4-5).

bankrupt member's chapter 11 estate and would not affect its property interests, which did not extend to specific assets owned by the limited liability company).

50.     Courts in other jurisdictions have likewise repeatedly held that when a member of an LLC files for bankruptcy, the assets of the LLC do not become part of the debtor member's bankruptcy estate.  *See, e.g., Harley-Davidson Credit Corp. v. Kutumian*, No. 1:12-CV-2077 AWI-BAM, 2013 WL 4487463, at *1 n.1 (E.D. Cal. Aug. 19, 2013) ("Bankruptcy filings by individual members of an LLC are not treated as special circumstances that would extend bankruptcy protection to the related LLC."), *report and recommendation adopted,* No. 1:12-CV-2077 AWI BAM, 2013 WL 6071995 (E.D. Cal. Nov. 13, 2013); *In re Calhoun*, 312 B.R. 380, 384 (Bankr. N.D. Iowa 2004) (holding that a debtor's bankruptcy stay does not extend to a LLC simply because the debtor held ownership interest in that LLC) ("[T]he debtor's property interest in a corporation or an LLC is narrowly confined to the intangible rights represented by the stock certificate or other ownership documentation.); *In re McCormick*, 381 B.R. 594, 602–03 (Bankr. S.D.N.Y. 2008) (holding that collection actions against a bankruptcy debtor's wholly-owned LLC did not violate the automatic stay because the LLC was a separate legal entity).[2]

51.     Moreover, by its own terms, the Fraudulent Conveyance Judgment *only* voided transfers as to Prospect, not as between the transferor and transferee.  *See, e.g., Texas Sand Co. v. Shield*, 381 S.W.2d 48, 55 (Tex. 1964) ("[A] conveyance, though fraudulent, is valid as between the parties to the conveyance."); *Liberty Sport Aviation, L.P. v. Texas Hill Country Bank*, No. 04-15-00480-CV, 2016 WL 4626238, at *3 (Tex. App.—San Antonio Sept. 7, 2016) ("When a fraudulent transfer is set aside, cancellation restores to the creditor and the transferor, only, the

---

[2] At a minimum, this Court should find that neither Kickapoo nor the Enmon Trust assets properly belong within the Debtor's bankruptcy estate. *See Liberty Sport Aviation, L.P.*, 2016 WL 4626238, at *3-*6.

rights they had against each other prior to the fraudulent transfer. . . such a determination would operate to restore [the creditor's] rights prior to the transfer, but would not affect the rights of [a third party].") (internal citations omitted), *review denied* (June 16, 2017); *Mladenka v. Mladenka*, 130 S.W.3d 397, 400-401 (Tex. App.—Houston 2004) ("When conveyance of property is found to be fraudulent, Texas courts have concluded that legal, as well as equitable title, remains with the debtor *relative to a defrauded creditor*") (emphasis added); *In re Estate of LaValle*, 218 S.W.3d 834, 836–37 (Tex. App.—Beaumont 2007) ("The grantor of property conveyed in fraud of creditors parts with his title when he executes the deed, and retains no interest in the property at his death. 'The proposition is well settled in this state that, as between the parties to the transfer, a conveyance made in fraud of creditors passes title to the vendee, and is defeasible only at the instance of the creditors.'") (internal citations omitted).  Additionally, in Texas, "[t]he rule is well established that the courts will not aid a grantor to regain property transferred to a grantee in order to defraud creditors."  *Poe v. Hamlin Nat. Bank*, 921 S.W.2d 515, 517 (Tex. App.—Eastland 1996) (citing *Lott v. Kaiser,* 61 Tex. 665 (1884); *Letcher v. Letcher,* 421 S.W.2d 162 (Tex. Civ. App.—San Antonio 1967) ("As between the parties to a fraudulent transaction, the transfer designed to defraud creditors passes title to the property, and the grantor may thereafter assert no right, title or interest in the property. Relief will be denied a grantor who seeks to set aside a deed on the grounds it was executed to defraud his creditors, for courts leave parties to a fraudulent transaction in the position they have placed themselves."), *writ dismissed* (Feb. 14, 1968); *Dominguez v. Trent,* 836 S.W.2d 677 (Tex. App.—El Paso 1992); *Leal v. Cortez,* 603 S.W.2d 262 (Tex. Civ. App.—Corpus Christi 1980); *Garcia v. Garcia De Ortiz,* 257 S.W.2d 804 (Tex. Civ. App.—San Antonio 1953); *Bramlett v. Jenkins,* 231 S.W.2d 539 (Tex. Civ. App.—Fort Worth 1950).

52. Based on the foregoing, apart from the assets of Kickapoo and the Enmon Trust, the Debtor has little or no assets to contribute to a chapter 11 plan and the Debtor's bankruptcy should be dismissed. *See In re 1701 Commerce, LLC*, 477 B.R. 652, 658 (Bankr. N.D. Tex. 2012) ("[W]here, as here, 'a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors,' the inference of bad faith is particularly strong.").

## 2. The Debtor Has no Employees or Cash Flow Independent of Kickapoo.

53. Absent a determination that Kickapoo's assets constitute property of the Debtor's estate, which is unsupported for the reasons set forth above, the Debtor has no employees or meaningful cash flow to support a chapter 11 plan. In fact, the Debtor's fraudulent scheme of transferring assets out of Prospect's reach has left his own estate with little more than claims and causes of action against his affiliates, which he now seeks to release under the Plan for no consideration.

## 3. This is a Two-Party Dispute — the Debtor Filed His Bankruptcy Petition as a Litigation Tactic to Thwart the Collection Efforts of His Only Real Unsecured Creditor.

54. It is evident from the Debtor's filing that he does not truly seek to reorganize his purported assets. Indeed, the Debtor does not even claim to be in financial distress. *See In re Antelope Techns., Inc.*, 431 Fed. App'x 272, 275 (5th Cir. 2011) (affirming bad faith dismissal of chapter 11 petition where "the purpose of the petition was not primarily to reorganize or respond to financial crisis"). With the sole exception of Prospect, the Debtor has been meeting his financial obligations to creditors and it was *only* the imminent January 11, 2018 hearing on the Receiver Motion that prompted the Debtor to file his Petition—not any change in his financial condition.

55.     Tellingly, the Debtor agreed to the appointment of a receiver over Kickapoo prior to the January 11, 2018 receivership hearing and represented this fact to Judge Hoyt in writing in a joint submission of the parties.  Despite this, the Debtor waited until 9:00 p.m. *the day before the hearing on the Receiver Motion* to file his chapter 11 bankruptcy petition.  The timing of the Debtor's filing plainly "evidences an intent to delay or frustrate" Prospect's legitimate efforts to enforce its creditor rights.  The Debtor's financial "problems" stem solely from his fear that Judge Hoyt would grant the Receiver Motion and appoint a receiver over Kickapoo—not the type of financial crisis the bankruptcy process was designed to address.

**4.      The Debtor Has a Long History of Bankruptcy Abuse.**

56.     The Debtor and his affiliates have exhibited a pattern of improperly using the bankruptcy courts in an attempt to delay and frustrate Prospect's collection efforts.  As discussed above, two bankruptcy courts in Texas have previously dismissed bankruptcy cases orchestrated by the Debtor—the Grace Enmon Bankruptcy filed by the Debtor's mother Grace Enmon on the eve of trial in the Fraudulent Conveyance Action and the Kickapoo Bankruptcy filed shortly after the issuance of the Fraudulent Conveyance Judgment—as bad faith filings.

57.     The United States Trustee moved to dismiss the Grace Enmon Bankruptcy stating: "The present case was filed as a litigation tactic to forestall the Prospect lawsuit. This is not a good faith use of the bankruptcy process."  *See* **Exhibit 14**.  In that case, the facts were so egregious that Grace Enmon's bankruptcy counsel was personally sanctioned for his participation in a "scheme" with the Debtor to use the bankruptcy petition to attempt to derail the Fraudulent Conveyance Action pending before Judge Hoyt.  *See* **Exhibit 16**.

58.     Similarly, the bankruptcy court dismissed the Kickapoo Bankruptcy, finding that Kickapoo had "no financial need" to file for bankruptcy, and instead "appear[ed]" to have filed the bankruptcy petition "to gain an unfair advantage in a two-party dispute, by delaying

20

implementation of the Judgment of the United States District Court for the Southern District of Texas, while an appeal is pending."  *See* **Exhibit 23**.  The Debtor's Petition is merely his latest bad faith litigation tactic in a long-running scheme to prevent Prospect from collecting on its judgments.  *See In re First Financial Enterprises, Inc.*, 99 B.R. 751, 756 (Bankr. W.D. Tex. 1989) (bankruptcy case was dismissed under § 1112(b) as bad faith filing since "obvious purpose" in filing case was "to use the Chapter 11 filing as a litigation strategy"); *In re Starmark Clinics, LP*, 388 B.R. at 736; *Krueger v. Torres*, 2014 WL 12584335, at *3; *In re Antelope Techs., Inc.*, 2010 WL 104556, at *3; *In re Phicof, LLC*, 2011 WL 5855048, at *6.  For this reason alone, this case should be dismissed.

> **5.    The Debtor's "Plan" is Not Proposed in Good Faith and is Unconfirmable as a Matter of Law.**

59.    The Plan is only further evidence of the Debtor's bad faith.  First, by its terms (as discussed above), the Plan attempts to "cleanse" non-debtor assets through an asset sale to the Debtor's wife.  Section 363 does not authorize such relief for non-debtors.  *See e.g., In re Murchison, Jr.*, 54 B.R. 721, 725 (Bankr. N. D. Tex. 1985) (Holding that Section 363(b)(1) does not authorize the sale of property that does not constitute property of the estate under Section 541(a)(1), even if such property belongs to a related entity in which the Debtor owns an interest).

60.    Even if the Court could entertain such relief, however, the Plan fails to meet several other requirements of Section 1129.  Among other things, the Plan improperly designates classes 1 through 7 as impaired despite providing that such classes will be "paid in full."  Given their *actual* treatment, classes 1 through 7 should not be entitled to vote.  The only remaining non-insider classes (classes 8 and 9) should really be one class-unsecured creditors.  As Prospect carries the only truly impaired class, the Debtor cannot confirm its Plan absent Prospect's vote

*even* if it attempts to utilize the cram-down provisions of Section 1129(b).  *See* 11 U.S.C. §1129(a)(10).

61.     The Plan is also not proposed in good faith as required by Section 1129(a)(3) for the reasons set forth above, violates the absolute priority rule (*See* 1129(b)(2)) and does nothing to address the requirements of Section 1129(a)(15) (requiring contribution of 5 years disposable income).   In essence, the Plan merely "refinances" certain non-debtor secured obligations, transfers property from one non-debtor-affiliate to another and fails to provide any material benefit to unsecured creditors.

62.     Despite such shortcomings, the Debtor unjustifiably attempts to release claims against non-debtor affiliates in contravention of the Fraudulent Conveyance Judgment with no explanation or support (*see* Section 9.01 of the Plan) and purports to grant himself a discharge of non-dischargeable claims (*see* Section 9.03) despite Prospect's rights under Section 523 of the Bankruptcy Code.[3]

<u>**CONCLUSION**</u>

Based on the foregoing, no justification exists for allowing the Debtor to administer non-debtor property and abuse the bankruptcy process to the detriment of Prospect.  This case and the Plan are nothing more than the latest iteration of the Debtor's bad faith attempt at avoiding Prospect's judgment.  Cause exists to dismiss this case under 11 U.S.C. § 1112(b) and applicable Fifth Circuit law.

Accordingly, Prospect respectfully requests that this Court enter an order dismissing this bankruptcy case, and awarding such other and further relief as is just, including the award of costs and fees to Prospect.

---

[3]  Prospect intends to file a complaint against the Debtor under 11 U.S.C. §523.

Dated: February 9, 2018.

Respectfully submitted,

By:    /s/ Joshua W. Wolfshohl
           Joshua W. Wolfshohl
           State Bar No. 24038592
           Porter Hedges LLP
           1000 Main Street, 36th Floor
           Houston, Texas 77002
           (713) 226-6000
           (713) 228-1331 (fax)
           *Counsel for Prospect Capital Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2018, a true and correct copy of the foregoing instrument was duly served by electronic transmission to all registered ECF users appearing in the case.

/s/Joshua W. Wolfshohl
Joshua W. Wolfshohl

23